******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# EDGEWOOD PROPERTIES, LLC *v.* DYNAMIC MULTIMEDIA, LLC, ET AL.
## (AC 46250)

Elgo, Suarez and Flynn, Js.

*Syllabus*

The defendants appealed to this court from the judgment of the trial court rendered for the plaintiff, who commenced this summary process eviction proceeding. The defendants entered into a written lease agreement with O with respect to certain residential property. O died and the property was sold to the plaintiff. Although the plaintiff demanded that the defendants vacate the property, the defendants refused to do so, and the plaintiff served the defendants with notices to quit. After trial commenced, the court denied the defendants' motions in limine to present evidence of an alleged settlement and to summarily enforce a settlement agreement. *Held*:

1. This court concluded that, although the trial court improperly determined that the plaintiff was entitled to a judgment of possession of the property based on lapse of time, the defendants were not entitled to relief with respect to this claim: the only evidence of a written lease agreement was the agreement between O and the defendants, an agreement that ended, pursuant to its terms, when title to the property was transferred to the plaintiff, and, accordingly, the trial court erred in finding the existence of a rental agreement between the parties and the judgment could not be sustained on the ground of lapse of time; moreover, the plaintiff was entitled to judgment in its favor on the alternative ground that the defendants' privilege or right to occupy the property had expired, as it was undisputed that the property was sold to the plaintiff and the defendants remained in possession of the property.

2. The trial court properly denied the defendants' motion in limine to present evidence of a purported settlement agreement between the parties: although the motion in limine described the evidence the defendants wanted to present, it did not address the prejudice that could result, and the court reasonably considered this motion in light of the defendants' motion to enforce a purported settlement agreement and discussed the propriety of the defendants' decision to seek summary enforcement of a settlement agreement, the existence of which was vehemently disputed by the plaintiff, as well as the potential to disrupt the summary process trial that had already commenced; moreover, the court noted that the defendants had opportunities for settlement negotiations before trial and reasonably concluded that, had a settlement been reached, a mediation specialist would have reported the settlement to the court, that granting the motion would have prejudiced the plaintiff, and that the focus should

be on the need to avoid any undue delay in adjudicating the plaintiff's action.

3. The defendants' claim that the trial court abused its discretion in denying their motion to enforce a purported settlement agreement was unavailing; although the trial court improperly relied on the rule of practice applicable to motions for summary judgment (§ 17-44), the defendants were not entitled to relief because the court properly refused to hear evidence of the alleged agreement, as the court's authority to enforce a settlement agreement may be exercised only when the terms are clear, unambiguous and undisputed, and, in the present case, the existence of a settlement agreement was in dispute, and the record did not include any evidence of an enforceable agreement.

Argued November 8, 2023—officially released July 9, 2024

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Hartford, Housing Session, where the plaintiff filed a substitute complaint; thereafter, the case was tried to the court, *Esperance-Smith, J.*; subsequently, the court, *Esperance-Smith, J.*, denied the defendants' motions in limine and for enforcement of a settlement agreement; judgment for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*Thomas A. Amato*, for the appellants (defendants).

*Jennifer E. Mira*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. In this summary process action, the defendants, Daniel A. Martin, Dynamic Multimedia, LLC, and Badger Entertainment, LLC, appeal from the judgment of the trial court rendered in favor of the plaintiff, Edgewood Properties, LLC. On appeal, the defendants claim that the trial court improperly (1) determined that the plaintiff was entitled to a judgment of possession of the subject property based on lapse of time, (2) denied their motion in limine to present evidence of a purported settlement agreement reached by the parties, and (3) denied their motion for summary

enforcement of the purported settlement agreement. We affirm the judgment of the trial court.

The plaintiff commenced the underlying summary process action against the defendants on September 10, 2021. In its substitute complaint dated October 13, 2021, the plaintiff alleged the following facts. On or about November 21, 2018, Robert K. Olson entered into a written lease agreement with the three defendants for certain residential property in South Windsor.[1] According to the terms of the lease agreement, upon the sale of the property to a third party who was unrelated to Olson and the defendants, the defendants were obligated to vacate the property, remove their belongings therefrom, and leave the property in good and clean condition. On or about March 3, 2020, Olson died and the property became part of his estate. On or about March 5, 2021, the executor of Olson's estate sold the property to the plaintiff for $100,000 and, by virtue of an executor's deed, conveyed the property to the plaintiff. Following the conveyance, the plaintiff demanded repeatedly that the defendants vacate the property, and the defendants refused the plaintiff's demands. On August 3, 2021, the plaintiff served each of the defendants with a notice to quit, thereby informing the defendants that they were to vacate the property by September 6, 2021.[2]

In count one of the substitute complaint, the plaintiff alleged that it was entitled to possession of the property on the ground that the defendants' right or privilege to occupy the property pursuant to the lease agreement had expired following the conveyance to the plaintiff.

[1] At trial, Martin testified that Olson was his grandfather and that he operates Dynamic Multimedia, LLC, and Badger Entertainment, LLC, both of which are marketing companies.

[2] The reasons provided in the notices to quit, which were attached as exhibit A to the plaintiff's substitute complaint, were "lapse of time" and "the original right or privilege to occupy has expired."

In count two, the plaintiff alleged that, "[w]hen the defendants failed to vacate the [property] upon the termination of their lease term, the defendants' tenancy converted to a month-to-month lease" and that "[t]he month-to-month lease has been terminated by lapse of time."

In their answer, the defendants admitted that they had entered into a lease agreement with Olson, and they took possession of and continue to occupy the property. The defendants otherwise denied the allegations or left the plaintiff to its proof. By way of special defense as to both counts, the defendants alleged the plaintiff never acquired title to the subject premises and it therefore lacked standing to commence and prosecute the present action. In support of this defense, the defendants alleged that Martin, a creditor of Olson's estate, had commenced a civil action against the executor of Olson's estate challenging the "purported sale" of the property to the plaintiff. The defendants alleged that Martin's action was based on the theory that the executor had not obtained adequate consideration in the sale and set forth claims of breach of fiduciary duty, negligence, and a violation of the Connecticut Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq. As to both counts of the substitute complaint, the defendants also alleged, by way of separate special defenses, that the plaintiff had failed to state a claim upon which relief could be granted. In its reply, the plaintiff denied the defendants' special defenses and, pursuant to Practice Book § 10-57, pleaded several matters in avoidance of the affirmative allegations in the defendants' answer.

A court trial commenced on January 24, 2023, and continued on February 3, 2023. During the plaintiff's case-in-chief, the court heard testimony from Rui Costa, the plaintiff's sole member. During the defendants' case-in-chief, the court heard testimony from Martin and

Alexander W. MacDonald, a real estate appraiser. On January 31, 2023, prior to the second and final day of trial, the defendants filed a motion in limine seeking permission from the court to "permit the defendants to offer evidence regarding the formation and breach of a settlement agreement into which the parties entered one day prior to the commencement of trial . . . ." The defendants also filed a motion seeking "summary enforcement" of what they described as a settlement agreement between the parties. The court denied both motions.

Following the trial, the court issued an order in which it rendered judgment in favor of the plaintiff. In relevant part, the order stated: "A summary process trial for lapse of time was held on January 24, 2023, and February 3, 2023. At the hearing were [Costa] and [the] defendant [Martin] and counsel for both parties.

"After reviewing all the relevant pleadings, arguments, testimony and exhibits, the court finds that the plaintiff has proved by a fair preponderance of the evidence the following facts.

"The service of the notice to quit, the termination date, and service of the complaint were all timely and made according to the relevant law. . . .

"There was a rental agreement between the parties. . . . The plaintiff is the owner or lessor of the subject property. . . . The term of the written rental agreement terminated. . . . The defendant[s] [are] still in possession of the premises.

"The court finds that the defendant[s] [have] not met [their] burden of establishing [their] special defenses.

"Now, therefore, the court enters judgment of possession in favor of the plaintiff. An execution may issue immediately after the statutory stay." The court thus appears to have based its judgment on the cause of

action sounding in lapse of time, not the cause of action based on the allegation that the defendants' right or privilege to occupy the property pursuant to the lease agreement had expired following the sale to the plaintiff. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

First, the defendants claim that the court improperly determined that the plaintiff was entitled to a judgment of possession of the subject property based on lapse of time. We agree with the defendants, but we conclude that the defendants are not entitled to any relief with respect to this claim.

The defendants argue that the court's decision was based upon a clearly erroneous finding of fact, namely, that there was a rental agreement between the parties.[3] The defendants further assert that the evidence demonstrated that, following the conveyance of the property to the plaintiff, they continued to occupy the property as tenants at sufferance and, thus, the court erred as a matter of law in granting the plaintiff relief on the ground of lapse of time. According to the defendants, lapse of time is not a legally cognizable theory to support the termination of a tenancy at sufferance.

We begin by setting forth our standard of review and applicable legal principles. "Factual findings are subject to a clearly erroneous standard of review. . . . It is well established that [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the

---

[3] In their answer to paragraph 1 of count one of the plaintiff's substitute complaint, the defendants admitted that, on or about November 21, 2018, they entered into a written lease agreement with Olson.

entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *J. M.* v. *E. M.*, 216 Conn. App. 814, 820–21, 286 A.3d 929 (2022). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts as they appear in the record." (Internal quotation marks omitted.) *Housing Authority* v. *Neal*, 211 Conn. App. 777, 783, 274 A.3d 257 (2022).

"Summary process is a statutory remedy that enables a landlord to recover possession from a tenant upon the termination of a lease . . . . The purpose of summary process proceedings is to permit the landlord to recover possession of the premises upon termination of a lease without experiencing the delay, loss, and expense to which he might be subjected under a common law cause of action. The process is intended to be summary and is designed to provide an expeditious remedy to a landlord seeking possession . . . . We have recognized the principle that, because of the summary nature of its remedy, the summary process statute must be narrowly construed and strictly followed. . . .

"Summary process actions are governed by General Statutes § 47a-23, which allows an owner or lessor to issue a notice to quit only under certain conditions, including: (1) when the lease terminates . . . by lapse of time . . . . In a summary process action for lapse

of time, the plaintiff landlord must prove, as part of its prima facie case, that the term of the lease has expired." (Citations omitted; internal quotation marks omitted.) *Altama, LLC* v. *Napoli Motors, Inc.*, 181 Conn. App. 151, 158, 186 A.3d 78 (2018).[4] A "tenant" is defined as "the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law." General Statutes § 47a-1 (*l*).

"[Summary process] is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a [leasehold] is converted to a tenancy at sufferance." (Citation omitted.) *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988).

"A tenancy at sufferance arises when a person who came into possession of [property] rightfully continues

---

[4] There are various grounds for summary process actions. In basic terms, when a landlord brings a summary process action based on "lapse of time," it must demonstrate, among other statutory requirements, that it is entitled to relief under the corresponding subparagraph of the summary process statute, § 47a-23 (a) (1) (A), because a rental agreement has expired, but the tenant remains in possession of the premises. General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building, any apartment in any building, any dwelling unit, any trailer, or any land upon which a trailer is used or stands, and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates . . . (A) By lapse of time . . . such owner or lessor, or such owner's or lessor's legal representative, or such owner's or lessor's attorney-at-law, or in-fact, shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

in possession wrongfully after his right thereto has terminated. . . . After a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit. . . . Accordingly, use and occupancy payments . . . are paid to a landlord by a tenant at sufferance who occupies the [property] in the absence of a lease agreement. . . . They are most frequently associated with summary process proceedings to evict a tenant because, after a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance." (Citation omitted; internal quotation marks omitted.) *Housing Authority* v. *Neal,* supra, 211 Conn. App. 783–84; see *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.,* 292 Conn. 459, 473 n.18, 974 A.2d 626 (2009) ("[A]fter a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. . . . A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property which he occupied in the form of use and occupancy payments . . . and to fulfill all statutory obligations." (Internal quotation marks omitted.)); see also General Statutes § 47a-3c ("[i]n the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit"); General Statutes § 47a-26b (providing for use and occupancy payments to be made, upon motion, during pendency of summary process action).[5]

---

[5] "The mere act of holding over does not create a new tenancy. . . . Instead, the holdover tenant becomes a tenant at sufferance with no legal right to possession." (Citations omitted; footnote omitted.) *FJK Associates* v. *Karkoski,* 52 Conn. App. 66, 68, 725 A.2d 991 (1999). "A holdover tenant will be considered either a tenant at sufferance if it merely holds over . . . or a month-to-month tenant if the lessor continues to accept the lessee's monthly rental payments following the lease's expiration." (Citation omitted.) *Platt* v. *Tilcon Connecticut, Inc.,* 196 Conn. App. 564, 581 n.11, 230 A.3d 854, cert. denied, 335 Conn. 917, 230 A.3d 643 (2020). "Connecticut

With respect to the court's finding that "[t]here was a rental agreement between the parties," the defendants argue, and our careful review of the evidence reflects, that the only evidence of a written lease agreement was the agreement entered into between Olson and the defendants on November 21, 2018. The lease agreement contains the following relevant provisions. Paragraph 1 states: "The term of this lease starts on November 1, 2018, and ends on the date that title to the house is conveyed to a third party purchaser who is unrelated to the landlord and tenant by consanguinity or affinity, which act of conveyance excludes devolution of title by devise or descent." Paragraph 11 states: "When this lease ends, [the defendants] will leave the house and remove all [their] property and the property of others. [The defendants] will leave the house in good and clean condition, and [the defendants] will repair any damage that was caused by [the defendants] or others." Paragraph 15 states: "If [Olson sells] the property, [Olson] shall not have any further liability to [the defendants] under this lease for any event that happens after [the defendants] receive written notice that [Olson has] sold the property. In addition, if [Olson sells] the property, any security deposit that [the defendants have given Olson] will be assigned to the new owner of the property, and [Olson] shall not have any further liability to

---

law allows a holdover tenant to be considered as a tenant at sufferance . . . or as a month-to-month tenant. . . . Our law, however, does not impose the original lease terms upon parties who have not agreed that such terms apply to a holdover tenancy." (Citations omitted.) *Meeker* v. *Mahon*, 167 Conn. App. 627, 638 n.5, 143 A.3d 1193 (2016). "A tenancy at will exists only when the occupation of the property is with the landowner's consent, continuing during the tenancy." (Internal quotation marks omitted.) *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 121 n.3, 682 A.2d 572, cert. denied, 239 Conn. 949, 686 A.2d 126 (1996), and cert. denied, 239 Conn. 950, 686 A.2d 126 (1996). A landlord may engage in conduct, such as accepting payment of rent, that transforms a tenancy at sufferance into a tenancy at will. See, e.g., *Borst* v. *Ruff*, 137 Conn. 359, 362, 77 A.2d 343 (1950).

return the security deposit to [the defendants]." Paragraph 18 states: "This lease shall be binding upon [the defendants] and [Olson] and your and our respective successors, heirs, executors and administrators." Paragraph 20 states: "The parties intend that this lease instrument be binding on their respective heirs, beneficiaries, executors, administrators, fiduciaries and assigns." The lease agreement did not include a hold-over provision.

The plaintiff argues that it "stepped into the shoes of [Olson] when it purchased the property, and therefore, the rights and obligations of the lease transferred to [the plaintiff] upon that conveyance." The plaintiff argues that paragraph 20 "demonstrates the parties' specific intent to have their future 'assigns' (i.e., purchasers) be bound to the lease terms." We conclude that the plaintiff's construction of the lease agreement is unreasonable in light of the agreement as a whole.

"In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Vaszil*, 279 Conn. 28, 35–36, 900 A.2d 513 (2006). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . [T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the

intent of the parties can be determined from the agreement's face. . . . Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." (Citations omitted; internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 20, 804 A.2d 865 (2002).

Paragraph 1 unambiguously reflects that the term of the written lease agreement between Olson and the defendants *ended* when the title of the property was transferred to the plaintiff because the uncontroverted evidence was that the plaintiff is a third-party purchaser who is unrelated to the parties to the agreement by consanguinity or affinity. In light of the plain and unequivocal meaning of paragraph 1, to the extent that other provisions of the lease agreement reflect an intent to bind "respective successors, heirs, executors and administrators" as well as "beneficiaries . . . fiduciaries and assigns" to the terms of the lease agreement, such provisions cannot reasonably be construed so as to bind a third-party purchaser who is unrelated to the parties by consanguinity or affinity.

The evidence does not reflect that, following Olson's death and the transfer of title to the plaintiff, the parties had come to any understanding or agreement with respect to the defendants' continued possession of the property. Costa testified as to his belief that, following the sale of the property, the defendants "were to vacate the property immediately." Thus, Costa testified that, following the purchase, he demanded that the defendants leave the property and served them with notices to quit. Martin testified that he did not come to any agreement, whether oral or written in nature, with the plaintiff concerning the defendants' ongoing presence at the property. There is no evidence in the record that, after the written lease agreement ended, the parties came to any agreement with respect to a new tenancy

or the payment of periodic rent. Moreover, there is no evidence that the plaintiff, as landlord, acquiesced in the defendants' continued possession of the property. For the foregoing reasons, we conclude that the court's factual finding concerning the existence of a rental agreement between the parties was in error.

The defendants argue that the court's clearly erroneous factual finding was harmful in that it led to the court's conclusion that the plaintiff was entitled to relief on the basis of lapse of time. The defendants assert, and we agree, that they became tenants at sufferance after their right to possess the property under the November 21, 2018 lease agreement had terminated and they continued to possess the property, without the plaintiff's approval. The defendants correctly argue that the court's judgment cannot be sustained on the ground of lapse of time, for such ground is not a legally sufficient ground to terminate a tenancy at sufferance. This court has previously reasoned that a cause of action based on lapse of time depends on the existence of a lease or rental agreement between the parties codifying an allotted time frame, for "[c]ommon sense dictates that when a contractual rental agreement is no longer in place, such an agreement can no longer be violated." *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 24, 33 A.3d 848 (2012); see also, e.g., *Kellish* v. *Rosenberg*, Superior Court, judicial district of Middlesex, Housing Session at Middletown, Docket No. CV-19-6024218-S (July 1, 2019) (68 Conn. L. Rptr. 781, 783) ("the defendants correctly argue that lapse of time would be an inappropriate cause of action against tenants at sufferance"); *Shough* v. *Hogan*, Superior Court, judicial district of New Haven, Housing Session, Docket No. SPNH 9702-49735 (March 21, 1997) (19 Conn. L. Rptr. 450, 450–51) ("[F]or lapse of time to be a valid reason for the issuance of a notice to quit there must [be] an underlying lease whether oral or written.

Lapse of time is not a sufficient reason to terminate a tenancy at sufferance. A tenancy at sufferance does not involve a contract or a lease." (Internal quotation marks omitted.)).[6]

Although we have concluded that the court made a factual error and that its judgment based on lapse of time cannot stand, that does not end our analysis as to the proper outcome of the present case.[7] We may affirm the judgment of the court if it "reached the right result, even if it did so for the wrong reason." *Kalas* v. *Cook*, 70 Conn. App. 477, 485, 800 A.2d 553 (2002); see also *White* v. *Dept. of Children & Families*, 136 Conn. App. 759, 767 n.5, 51 A.3d 1116 ("[w]e may affirm the judgment of the court on different grounds if we disagree with the grounds relied on by the court"), cert. denied, 307 Conn. 906, 53 A.3d 221 (2012).

As we discussed previously in this opinion, the plaintiff alleged, in count one of its substitute complaint, the ground that the defendants' privilege or right to occupy the property had expired. In support of this count, the plaintiff alleged the following facts: (1) on or about November 21, 2018, the defendants and Olson entered into a written lease agreement; (2) the terms of the lease agreement provided that the lease was to end when the property was sold to an unrelated third party;

---

[6] To the extent that this court's decision in *FJK Associates* v. *Karkoski*, 52 Conn. App. 66, 67, 725 A.2d 991 (1999), stands for the contrary proposition, we observe that the court in *FJK Associates* held that lapse of time was "an adequate ground for termination *under the facts of this case*," and we deem it appropriate to limit its holding to the unique and distinguishable facts before the court in that case. (Emphasis added.)

[7] During oral argument before this court, the parties were asked to address whether this court could affirm the judgment of the trial court on different grounds if it agreed with the defendants with respect to the alleged error raised in their first claim on appeal. The plaintiff's counsel argued that the judgment could be affirmed on the alternative legal ground on which they had relied in count one of the plaintiff's substitute complaint. The defendants' counsel acknowledged that relying on this alternative ground was a possibility but did not acquiesce in that path being taken by this court.

(3) the terms of the lease agreement required the defendants to vacate the property upon the sale of the property; (4) following Olson's death, the executor of his estate sold the property to the plaintiff; (5) despite the plaintiff's repeated demands, the defendants continue to occupy the property; (6) the defendants were served with notices to quit stating, in part, that their privilege to occupy the property had expired; and (7) the defendants continue in possession beyond the time designated in the notices to quit. The plaintiff alleged that, upon the sale of the premises to it, the defendants' "right or privilege to occupy the property . . . terminated . . . ."

The plaintiff, having relied in both its substitute complaint and notices to quit on the ground that the defendants' right or privilege to occupy the property had expired, was entitled to judgment in its favor on this alternative legal ground. Although the court's findings of fact in this case are scant, it nonetheless found that "[t]he term of the written rental agreement terminated." There was only one written rental agreement in evidence, namely, the written lease agreement that Olson had entered into with the defendants, which was admitted into evidence as exhibit 2. There was no testimony concerning another rental agreement for the property. Moreover, the terms of the written rental agreement are not in dispute. We have already discussed the provisions in the lease agreement related to the term of the lease and the defendants' obligation to vacate the property upon the sale of the property to an unrelated third party. The evidence was undisputed that a sale of the property occurred, and that Olson's executor conveyed the property to the plaintiff, an unrelated third party, by means of an executor's deed. Consistent with this undisputed evidence, the court found that "[t]he plaintiff is the owner or lessor of the subject property." The evidence that the defendants remain in possession

of the property beyond the time specified in the notices to quit likewise was undisputed. The court found that the defendants were "still in possession of the premises."

On the basis of those findings of the court that have not been challenged in this appeal, as well as the undisputed evidence that we have discussed in our analysis, we conclude that the plaintiff was entitled to relief under the summary process statute pursuant to the ground set forth in count one of the plaintiff's substitute complaint, namely, that the right or privilege that the defendants enjoyed pursuant to their written lease agreement with Olson had expired, but they continue to occupy the property. See General Statutes § 47a-23 (a) (3).[8] Having concluded that the court erred with respect to one of its factual findings and its reliance on § 47a-23 (a) (1) (A), we nonetheless conclude, on the basis of count one of the substitute complaint, that the court reached the correct result in rendering a judgment of possession in favor of the plaintiff.

II

Next, we address the defendants' remaining two claims, which are interrelated. The defendants claim that the court improperly denied their (1) motion in limine to present evidence of a purported settlement

---

[8] General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building, any apartment in any building, any dwelling unit, any trailer, or any land upon which a trailer is used or stands, and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner's or lessor's legal representative, or such owner's or lessor's attorney-at-law, or in-fact, shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

agreement between the parties and (2) motion for summary enforcement of the purported settlement agreement. We are not persuaded.

The following additional procedural history is relevant to both of these claims. On January 24, 2023, during the defendants' case-in-chief and near the conclusion of the first day of the trial, Martin was asked about his efforts to purchase the property from the plaintiff. The plaintiff's counsel objected on the ground that the question was "dangerously approaching [the subject of] settlement conversations." The defendants' counsel responded, "[o]ur purported evidence . . . is to show that there was a settlement agreement between these two parties." The court questioned why that topic was relevant. The defendants' counsel responded, "I was going to say . . . if there was a settlement agreement between the parties . . . and, if one party breaches it, that's actionable." The following colloquy then occurred:

"The Court: Do you have the agreement?

"[The Defendants' Counsel]: We . . . do have a series of email communications. . . .

"[The Plaintiff's Counsel]: Your Honor . . . this is actually, this is a problem. I suggest you stop because this is not—you're making gross misrepresentations now. There is no settlement agreement whatsoever.

"[The Defendants' Counsel]: Might I just finish my argument first, Judge?

"[The Plaintiff's Counsel]: I'm concerned for you, so that's why I'm stepping in here.

"[The Defendants' Counsel]: I'm saying, Judge, there are a series of email communications between the parties. And the submission to the plaintiff of a proposed—a written contract that reflects the terms, except for

one, that were agreed upon. Which was, then, agreed upon later. And, our position is that there was a settlement agreement . . . which is actionable. . . .

"[The Plaintiff's Counsel]: You are misrepresent—I can't even believe this is happening right now. I actually can't believe this is happening. . . . This is gross misrepresentation. And I would ask that all of this be stricken from the record, Your Honor. There is zero settlement agreement. There has been nothing—zero communication between the parties, as you just indicated.

"[The Defendants' Counsel]: I think that the evidence will disclose otherwise. And I think that is a question for the court to adjudicate, whether or not there exists sufficient evidence to support a settlement agreement. If the court says no, there's not. Fine. But that's not a situation where counsel can just argue that there's no evidence, without seeing or knowing . . . .

"[The Plaintiff's Counsel]: You're—the court is well aware that settlement discussions are privileged. You can't be discussing this right now. And all you're doing is delaying this trial . . . .

"[The Defendants' Counsel]: We're the ones that suggested coming back here and completing [Martin's] testimony [during the first day of trial]. So, don't accuse us.

"[The Plaintiff's Counsel]: Your Honor, my objection stands. If Your Honor can rule. And then we can proceed with this. I don't want to waste any more time. I'm . . . dangerously close to suggesting a motion for sanctions right now.

"[The Defendants' Counsel]: This is not a question of settlement negotiations. It is a settlement agreement. . . .

"The Court: So, if there's an agreement . . . .

"[The Plaintiff's Counsel]: There is no agreement, Your Honor. Nothing has been agreed to. Nothing has been signed. That [is] misrepresentation alone, I move for sanctions.

"[The Defendants' Counsel]: If there is an agreement, and a party breaches it, our case law supports a cause of action for that. Now, if this court wants us to, or is suggesting we bring a separate action for that and test it elsewhere? That is actionable . . . it's a cause of action.

\* \* \*

"The Court: Is there a document that you're seeking to enter into evidence?

"[The Defendants' Counsel]: We do have a series of documents, Judge. . . .

"[The Plaintiff's Counsel]: To the extent they were part of any settlement negotiations to prevent this trial and this colossal waste of time and money on behalf of my client. Then it is completely excluded. It is precluded. I would file an oral motion in limine to preclude it. I shouldn't even need to. I can't believe this is even happening."

Thereafter, the plaintiff's counsel made an oral motion for judgment in the plaintiff's favor. The defendants' counsel objected to the motion on the basis of what he considered to be critical issues raised by way of the defendants' answer and special defenses. The court denied the plaintiff's oral motion for judgment and continued the trial to another day.

On January 31, 2023, prior to the second day of trial, the defendants filed a motion in limine asking "that the court permit the defendants to offer evidence regarding the formation and breach of a settlement agreement into which the parties entered one day prior to the

commencement of trial on January 24, 2023 . . . .” On the same day, the defendants also filed a motion for “summary enforcement” of the alleged settlement agreement. That motion stated: “[D]uring the period of approximately October 20, 2022, to January 23, 2023, the parties negotiated and formed an agreement by which the plaintiff agreed to sell, and the defendant Daniel A. Martin agreed to purchase, the premises subject of this action for the price of $300,000, subject to the condition that [Martin] obtain a mortgage, with a $50,000 nonrefundable deposit and no waiver by the plaintiff of any prior use and occupancy claims that it may possess against the defendants.

“Wherefore the defendants pray that the court order the parties to execute the written contract, incorporating the terms which the court finds to which they agreed, for the purchase and sale of the subject premises.”

In the memorandum of law submitted by the defendants in support of their pending motions, they stated that, if the court had permitted Martin to respond to his attorney’s inquiry concerning his efforts to purchase the property, “Martin would have testified that he and the plaintiff exchanged written communications, which, in the aggregate, would have demonstrated that the parties had consummated a written agreement for the purchase and sale of the subject premises. Such agreement would have resolved the plaintiff’s claim for occupancy.” The defendants also represented that, “[i]n the present case, Martin made an offer to purchase the premises, the plaintiff made a counteroffer, and the plaintiff accepted it.” The defendants stated that, “[i]n the present case, the plaintiff’s counsel, as the plaintiff’s agent, authorized to negotiate on behalf of the plaintiff and the party to be charged, signed the several email correspondences which, in the aggregate, formed the agreement to purchase and sell the subject premises.”

The defendants also stated that the plaintiff had breached an agreement to settle the action, even though the agreement was not memorialized in a written contract that had been signed by both parties. The defendants argued that "[t]he mere fact that the parties still may have needed to accomplish the perfunctory tasks of printing and signing the form contract the plaintiff approved in no manner compromises the validity of the agreement."

In response, the plaintiff filed an objection to the defendants' motion to enforce the alleged settlement agreement, in which it disputed the alleged terms of any agreement. Later, the plaintiff filed an amended objection to the motion to enforce the alleged settlement agreement. Therein, the plaintiff argued that the defendants violated Practice Book § 17-44 by failing to seek permission from the court to file the motion to enforce, which it characterized as "a motion for summary judgment." The plaintiff also argued that, if the defendants' motion to enforce was proper, it should be denied because the court did not have the authority to summarily enforce the alleged settlement agreement because the defendants had not presented a written settlement agreement that memorialized the purported agreement on which the defendants relied, and the plaintiff disputed its terms.

By order of February 2, 2023, the court denied the motion in limine. By order of the same date, the court denied the motion for summary enforcement of the alleged settlement agreement. The court noted that the motion was "[d]enied based on the defendants' failure to comply with Practice Book § 17-44. At the outset of the trial the next day, the defendants' counsel made an oral motion for a continuance on the ground that Martin was unable to attend the proceeding. After conferring with the parties' counsel in chambers and hearing argument, the court, in open court, denied the motion. The

defendants thereafter did not present further evidence, and the court heard oral argument from both parties with respect to the merits of the summary process action.

After the defendants filed the present appeal, the court, in response to a motion for articulation filed by the defendants, set forth the reasoning for its denial of the motion in limine. The court stated: "This matter was scheduled for a summary process trial on January 24, 2023. The parties first met with a mediation specialist, on the same date, for the purposes of discussing settlement negotiations and possibly entering into an agreement prior to the commencement of trial. The parties failed to enter into a settlement agreement after spending a considerable amount of time in previous mediations. Therefore, the matter was scheduled for January 24, 2023, and, due to time constraints, the matter had to be scheduled for an additional day of trial. At the conclusion of day one of trial, the [defendants' counsel] attempted to enter what he deemed to be an agreement between the parties while examining his final witness. The plaintiff's counsel objected on the basis that the [defendants' counsel] was attempting to enter settlement negotiations into evidence. The defendants' counsel stated that there was no written agreement to enter into evidence, rather, a set of emails between counsel, that, when considered together would constitute an agreement between the parties."

After describing the defendants' motion in limine, motion for summary enforcement of the alleged settlement agreement, and the memorandum of law filed in support of the motions, the court set forth law concerning summary process actions generally. The court noted, in particular, that a summary process action is designed to "secure a prompt hearing and final determination . . . ." (Internal quotation marks omitted.) The court then stated: "Practice Book § 15-3 provides that,

[i]f a case has not yet been assigned for trial, a judicial authority may, for good cause shown, entertain the motion [in limine]. A motion in limine is intended to allow the trial court to rule in advance of trial on the admissibility and relevance of certain anticipated evidence. . . . Further, it is within the court's discretion whether to consider a motion in limine. [Section 15-3 additionally provides that the judicial authority may . . . deny the motion with or without prejudice to its later renewal . . . .

"In the present matter, the court denied the defendants' motion in limine after considering the multiple opportunities for negotiation the parties had before the commencement of trial on January 24, 2023, and the fact that a mediation specialist would have reported an agreement between the parties prior to the commencement of trial on January 24, 2023. The court additionally considered the prejudice that would have resulted to the plaintiff by granting the defendants' motion in limine as a result of the defendants' inopportune timing for filing the motion in limine, as the majority of the trial evidence had already been heard by the court.

"Furthermore, on February 3, 2023, prior to the commencement of the second date of trial, the court held a status conference with the parties, where multiple trial matters were discussed, specifically, the denial of the defendants' motions and the lack of a need to have any additional hearings or delay regarding the second day of the trial. Additionally, there was discussion regarding the failure of [Martin] to appear [at the second day of the trial] and the [counsel for the] defendants' oral motion to continue, which was later denied on the record. The trial proceeded without [Martin] present on February 3, 2023.

"For all these reasons, the court denied the defendants' motion [in limine]." (Citation omitted; internal quotation marks omitted.)

A

The defendants claim that the court improperly denied their motion in limine to present evidence related to the purported settlement agreement reached by the parties. We disagree.

Motions in limine are governed by Practice Book § 15-3, which provides in relevant part: "The judicial authority to whom a case has been assigned for trial may in its discretion entertain a motion in limine made by any party regarding the admission or exclusion of anticipated evidence. . . . Such motion shall be in writing and shall describe the anticipated evidence and the prejudice which may result therefrom. All interested parties shall be afforded an opportunity to be heard regarding the motion and the relief requested. The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding." "[T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in

a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely affected] the result. . . . Despite this deferential standard, the trial court's discretion is not absolute. Provided the defendant demonstrates that substantial prejudice or injustice resulted, evidentiary rulings will be overturned on appeal [when] the record reveals that the trial court could not reasonably conclude as it did." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 128, 956 A.2d 1145 (2008).

As the plaintiff correctly observes, the defendants' motion in limine described the anticipated evidence they wanted to present, but the motion, and the memorandum of law accompanying the motion, did not address the prejudice that could result therefrom. The defendants' arguments in connection with their motion in limine focused on the importance of settlement agreements and the court's authority to enforce them, even in the context of an underlying action. In the present case, the court considered the motion in limine in light of the motion to summarily enforce the alleged settlement agreement, which was filed simultaneously with the motion in limine. Noting that the defendants had filed one memorandum of law in support of both motions, the court addressed the context for the motion in limine. Specifically, it discussed the propriety of the defendants' decision to seek the summary enforcement of a settlement agreement—an agreement that was vehemently disputed by the plaintiff—and the potential to significantly disrupt the summary process trial that had already commenced.[9]

---

[9] The defendants' memorandum of law, filed in support of both the motion in limine and the motion for summary enforcement of the alleged settlement agreement, itself conflated the issues raised in both of their motions.

This court has recognized that "[m]atters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court. . . . Connecticut trial judges have inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The [trial] court has wide latitude in docket control and is responsible for the efficient and orderly movement of cases. . . . The trial court has inherent authority to control the proceedings before it to ensure that there [is] no prejudice or inordinate delay." (Citations omitted; internal quotation marks omitted.) *Ill* v. *Manzo-Ill*, 210 Conn. App. 364, 374, 270 A.3d 108, cert. denied, 343 Conn. 909, 273 A.3d 696 (2022).

It is not surprising that the timing and circumstances surrounding the defendants' motion in limine and the motion to enforce that is inextricably related to the motion in limine are at the forefront of the court's thoughtful articulation. The court reasonably considered the fact that the defendants' counsel waited until the conclusion of the first day of the trial to attempt to introduce evidence of a purported settlement agreement. Although the defendants asserted that an agreement was reached on January 23, 2023, the defendants did not file a motion in limine and a motion to enforce until January 31, 2023, prior to the second day of trial. The court noted that the defendants had "multiple opportunities" for settlement negotiations prior to the first day of trial and reasonably concluded that, had a settlement been reached, a mediation specialist would have reported such a settlement to the court in a timely manner prior to the trial. The court also reasonably concluded that granting the motion following the presentation of evidence would have prejudiced the plaintiff, which disputed the existence of any agreement.

Finally, the court observed that, during a status conference on February 3, 2023, before the second day of trial commenced, there appeared to be "the lack of a need to have any additional hearings or delay regarding the second day of the trial."

The defendants' appellate arguments challenging the court's denial do not meaningfully refute the grounds of the court's ruling. The defendants argue that, "because the court refused to consider any evidence regarding the settlement agreement, including the date or time when the parties may have reached it, the court's reliance on the timing of the motion is unsupported by any facts." This argument overlooks the fact that, in their motion for summary enforcement, the defendants did not represent that the agreement they sought to enforce was not the product of last-minute negotiations that may have occurred during the trial itself. Instead, the defendants represented that the purported agreement had been negotiated and formed prior to the trial, specifically, "during the period of approximately October 20, 2022, to January 23, 2023 . . . ." The defendants' counsel also represented during oral argument before the court that the purported agreement was memorialized in a "series of email communications" between the parties.[10] This representation makes it more likely that any negotiated settlement was the product of a back-and-forth between the parties, rather than a single conversation that occurred after the trial had commenced. Accordingly, it was not "purely speculative," as the defendants suggest, for the court to have concluded that the parties not only had multiple opportunities for negotiation, but that an agreement, if it

---

[10] In their reply brief, the defendants represented that, "during the mediation session the plaintiff's member denied the existence of any agreement, thereby obviating the need of reporting a resolution [to the court]." This representation amounts to further support for the trial court's observation, which the defendants challenge on appeal, that the parties had ample pretrial opportunities to negotiate a settlement in this case.

existed, occurred prior to the commencement of the presentation of evidence.

We note that the court, in its articulation, appropriately referred to the well settled principle that summary process "is a special statutory procedure designed to provide an expeditious remedy . . . . Summary process statutes secure a prompt hearing and final determination . . . ." (Internal quotation marks omitted.) The defendants argue, without any basis in fact or law, that "conducting a summary enforcement hearing within the context of a summary process trial should not consume so much time as to eviscerate the summary nature of such proceeding." In light of the undisputed fact that this action was commenced on September 10, 2021, and the trial did not begin until January, 2023—approximately twenty-two months after the conveyance of the property to the plaintiff—the court properly focused on the need to avoid any undue delay in the adjudication of the plaintiff's action so as not to prejudice the plaintiff in obtaining the relief to which it was entitled under law. On the basis of all of the foregoing considerations, we conclude that the court correctly exercised its discretion in denying the motion in limine.

B

The defendants claim that the court improperly denied their motion for summary enforcement of the purported settlement agreement. We disagree.

According to the defendants, the court abused its discretion in denying their motion because the court incorrectly relied on Practice Book § 17-44, a rule of practice governing motions for summary judgment, not motions for summary enforcement of a settlement agreement. Moreover, the defendants argue "that, when one party raises during the pendency of litigation the matter of a putative settlement agreement among the parties, the trial court may, and the defendants contend

must, conduct an evidentiary hearing to determine whether the parties formed such an agreement, and, if so, the terms thereof. If the court finds the formation of such an agreement, and the terms thereof are clear, then the court should enforce specifically such agreement . . . .” The defendants claim that the court abused its discretion in “fail[ing] to afford the defendants an evidentiary hearing, either during or separate from the summary process trial, in which they could have offered evidence concerning the establishment and terms of [the purported] settlement agreement.”

The following principles govern our review of this claim. “A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. . . . Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. . . . Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. The key element with regard to the settlement agreement in [*Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993) (*Audubon*)][11] . . . [was] that

---

[11] “In *Audubon*, our Supreme Court shaped a procedure by which a trial court could summarily enforce a settlement agreement to settle litigation . . . . The court held that a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. . . . [S]ee also *Reiner* v. *Reiner*, 190 Conn. App. 268, 270 n.3, 210 A.3d 668 (2019) ([a] hearing pursuant to *Audubon* . . . is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law . . .).” (Internal quotation marks omitted.) *Krasko* v. *Konkos*, 224 Conn. App. 589, 594 n.3, 314 A.3d 34 (2024).

there [was] no factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. . . . The rule of *Audubon* effects a delicate balance between concerns of judicial economy on the one hand and a party's constitutional rights to a jury and to a trial on the other hand. . . . To use the *Audubon* power outside of its proper context is to deny a party these fundamental rights and would work a manifest injustice. . . .

"A settlement agreement is a contract among the parties. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties . . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . Meeting of the minds is defined as mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation. . . . This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract. It refers to the terms of the contract, not to the power of one party to execute a contract as the agent of another. . . .

"A contract is not made so long as, in the contemplation of the parties, something remains to be done to

establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the decisive question is the intent of the parties as expressed. . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish. . . . Furthermore, [p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated. . . .

"Finally, [t]he fact that parties engage in further negotiations to clarify the essential terms of their mutual undertakings does not establish the time at which their undertakings ripen into an enforceable agreement . . . [and we are aware of no authority] that assigns so draconian a consequence to a continuing dialogue between parties that have agreed to work together. We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached. . . . More important . . . [when] the general terms on which the parties indisputably had agreed . . . included all the terms that were essential to an enforceable agreement . . . [u]nder the modern law of contract . . . the parties . . . may reach a binding agreement even if some of the terms of that agreement are still indefinite. . . .

"In *Vance* v. *Tassmer*, 128 Conn. App. 101, 16 A.3d 782 (2011), appeal dismissed, 307 Conn. 635, 59 A.3d 170 (2013), this court considered whether, in summarily enforcing a settlement agreement, a trial court had exceeded the scope of the agreement . . . . In reviewing that claim, this court explained that [i]t is axiomatic that courts do not rewrite contracts for the parties. . . . In determining whether the court went beyond the scope of the settlement agreement . . . we review the court's decision for an abuse of discretion.

. . . [T]he court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement. . . .

"Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Citations omitted; emphasis omitted; footnote added; internal quotation marks omitted.) *Krasko* v. *Konkos*, 224 Conn. App. 589, 604–607, 314 A.3d 34 (2024).

We agree with the defendants that the court improperly relied on Practice Book § 17-44. By its terms, § 17-44 applies to motions for summary judgment in which a party seeks judgment as to "any claim or defense . . . ." Here, there was no motion for summary judgment before the court. The defendants' motion was captioned as a "Motion for Summary Enforcement of Settlement Agreement."[12] The substance of the motion

---

[12] The court's reliance on Practice Book § 17-44 may be attributable, in part, to an unexplained mischaracterization of the defendants' motion as a "Motion for Summary Judgment" on the Judicial Branch electronic filing

and the memorandum of law accompanying it readily reflects that the defendants did not seek judgment as to any claim or defense in the summary process action but, rather, that the defendants brought the motion to compel compliance with a purported agreement to settle the action. Specifically, in the motion, the defendants sought an order for "the parties to execute the written contract, incorporating the terms which the court finds to which they agreed, for the purchase and sale of the subject premises."

We conclude, however, that the court's erroneous reliance on Practice Book § 17-44 does not entitle the defendants to relief with respect to this claim. The defendants argue that the court abused its discretion in denying their motion to enforce. They argue that the court did so without holding a hearing to determine the nature of the purported agreement and whether it should be summarily enforced. In our consideration of whether the court abused its discretion, we note that the defendants sought only an articulation of the court's denial of their motion in limine, stating in their motion for articulation with respect to the court's ruling on the motion in limine that, with respect to the denial of their motion to enforce, the court's order was "explicit enough for appellate review." Nevertheless, based upon the court's rationale for refusing to hear evidence relating to the motion for summary enforcement of the alleged settlement agreement, there is no basis for concluding that the court abused its discretion in denying the motion to enforce.

system. Thereafter, the plaintiff amended its original and proper objection to the motion with a motion captioned as an "Amended Objection to Motion for Summary Judgment." It is clear from the caption and body of the defendants' motion that it was a motion for enforcement of a settlement agreement. We therefore reject the plaintiff's argument in support of affirmance to the extent that it is premised on its characterization of the defendants' motion as a motion for summary judgment.

As a review of the colloquy that took place at trial reflects, the plaintiff's counsel vehemently denied that the parties had reached any mutual agreement to settle the action. In this circumstance, even if the court had decided that it would have been appropriate to consider the merits of the defendants' motion to enforce, the plaintiff's objection to the motion would have put before the court the factual issue of whether a settlement agreement existed in the first place. See, e.g., *Krasko* v. *Konkos*, supra, 224 Conn. App. 608.

For the reasons already discussed in this opinion, however, the court precluded the defendants from presenting any evidence of the purported settlement agreement. In part II A of this opinion, we upheld the court's exercise of its discretion in that regard. As a consequence of both the defendants' trial strategy of waiting to raise the issue of a purported settlement agreement until the end of the first day of the trial and the court's ruling to preclude the defendants from presenting evidence related to the purported agreement, the record before us does not afford us a basis upon which to conclude that the court abused its discretion in denying the motion to summarily enforce the purported agreement. The court's authority to enforce a settlement agreement as a matter of law may be exercised only when the terms are clear and unambiguous and not in dispute. Here, the very existence of a settlement agreement was in dispute. The record does not include any evidence, let alone an offer of proof, with respect to the existence of an enforceable agreement that was comprised of clear and unambiguous terms. Accordingly, we conclude that the defendants have failed to demonstrate that the court abused its discretion in denying the motion to enforce.

The judgment is affirmed.

In this opinion the other judges concurred.